No. 26,914.

THE MISSOURI PACIFIC RAILROAD COMPANY, *Appellee,* v. THE RED STAR MILLING COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

CARRIERS—*Rate Schedules—Recovery of Undercharges.* In an action by a railway carrier to recover a balance alleged to be due as undercharges in the intrastate transporation of 31 carloads of wheat and the products milled in transit therefrom, the record and pertinent freight rate schedules considered, and held to support plaintiff's cause of action and the judgment based thereon.

Appeal from Sedgwick district court, division No. 3; A. MILLS EBRIGHT, judge. Opinion filed December 11, 1926. Affirmed.

*C. H. Brooks, Willard Brooks* and *Howard T. Fleeson,* all of Wichita, for the appellant.

*W. P. Waggener, J. M. Challiss,* both of Atchison, and *James M. Cheney,* of St. Louis, Mo., for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an agreed case formulated under R. S. 60-2938 (Civ. Code, § 549), in which The Missouri Pacific Railroad Company, plaintiff, sought to recover from The Red Star Milling Company, defendant, a claimed balance of $431.33 and $12.94 war

tax due as undercharges on 31 carloads of wheat transported by plaintiff in 1921 from southwestern Kansas to certain points in southeastern Kansas exclusively in intrastate commerce.

The facts set forth in the agreed case include references to quotations from tariff schedules governing interstate rates, intrastate rates, and orders of the interstate commerce commission and of the Kansas public utilities commission, and all on file with those official bodies.

The controlling features of the agreed case may be abridged thus:

The 31 carloads of wheat originated at local points north and west of Pratt on the Anthony & Northern Railway. They were delivered to plaintiff and by it carried to destination, Fort Scott, Pittsburg, Cherokee, and points thereabout. The shipments were accorded milling-in-transit privileges in Wichita, and freight charges from points of origin to Wichita were paid when the grain was received in Wichita, and when the flour and grain products produced by such milling were forwarded from Wichita to southeastern Kansas destinations the freight charges were assessed and paid on the basis of what was supposed to be the balance of the correct freight rate from point of origin to final destination.

The regular and authorized intrastate schedules of freight rates on file with the public utilities commission in 1921 were tariff No. 146 of the Western freight tariff bureau and tariff No. 146-A of the Western trunk lines; and these rates would ordinarily govern this traffic but for the announcement of a rule appearing on their title pages, which read thus:

"Rates named herein will be applied only when they make a lower charge than is provided for in other tariffs lawfully on file with the public utilities commission of the state of Kansas."

At the same time there was on file with the state commission a schedule of rates pertaining to both local and interstate traffic entitled, "Missouri Pacific Railway Freight Tariff of Local and Joint Rates, No. 4746-C (I. C. C. No. A-4389)," one item, No. 770, on page 165 of which prescribed a rule for determining the correct rate for wheat, flour and flour products moving under its terms. That rule was to this effect:

"(1) Ascertain the rate from point of origin to Kansas City, Mo.; (2) ascertain the rate from point of destination to Kansas City, Mo.; (3) the higher one of these two rates is to be the rate to apply upon a shipment from a point on the Wichita & Northwestern Railway [Anthony & Northern] to a point

in the state of Kansas on the Missouri Pacific railway. This rate was known in railroad parlance as the 'higher Missouri river rate.'"

Prior to December 15, 1920, this so-called higher Missouri river rate was a lower freight rate than that prescribed in tariffs No. 146 and 146-A under sanction of the public utilities commission, and in consequence the higher Missouri river rate was the one on which such shipments as we have here to consider had been accustomed to move. But on December 15, 1920, by authority of the interstate commerce commission all interstate freight rates on wheat, flour and milling products in this territory were increased by thirty-five per cent. The new rates carrying this authorized advance were filed with the interstate commerce commission (and with the public utilities commission) in a schedule known as Supplement No. 14 to Freight Tariff of Local and Joint Rates 4746-C. The result of this thirty-five per cent advance was that the higher Missouri river rate became a higher rate than those prescribed in tariffs 146 and 146-A, governing the Kansas intrastate traffic.

Reduced to its simplest terms the claim of the railway was that the lawful charges on these 31 carloads should have been the rates specified in the Kansas local-distance tariffs 146 and 146-A because they were lower than the new higher Missouri river rate.

The defendant milling company's contention was that inasmuch as the higher Missouri river rate, which prior to December 15, 1920, had governed such traffic, was on file with the public utilities commission and had received its approval, and the Kansas commission had not given its approval to a raise in that rate, it was still the proper rate in 1921 when these shipments moved, notwithstanding it had been superseded by a new and advanced rate under sanction of the interstate commerce commission.

At the hearing before the trial court, the only witness called was defendant's traffic manager, whose testimony simplified the rather technical character of the matters incorporated in the agreed case. There was also introduced certain local and interstate tariffs and tariff supplements and other data showing progressive changes in pertinent rate schedules, as well as some quasi-judicial controversy between the public utilities commission and the interstate commerce commission over the propriety of the 35 per cent advances. An elaborate tabulation of the 31 shipments was also in evidence, showing points of origin, dates of shipment, rates paid, Kansas local-distance

rates, higher Missouri river rates, points of destination, claimed balances due, and other instructive data. Photostatic copies of this tabulation were submitted for our inspection.

The trial court gave judgment for plaintiff as prayed for. Defendant's assignment of errors reduces to one proposition—that the judgment should have been in its favor.

The rates which the plaintiff seeks to collect are those which, in 1921 during the movement of this traffic, were specified in tariffs 146 and 146-A, and which had the sanction of the public utilities commission (then known as the court of industrial relations). The rates specified in those schedules were applicable unless there was in existence at the time of those shipments a lower charge provided in other tariffs lawfully on file. The only other rate comparable with the Kansas local-distance tariff rates, was the higher Missouri river rate, which was an interstate rate applicable to similar traffic as shown by Missouri Pacific tariff No. 4746-C, but which had been lawfully raised by the interstate commerce commission to a figure in excess of the Kansas intrastate rates. The argument that the Kansas commission had never given its sanction to the raising of the higher Missouri river rate does not control this controversy. The Kansas commission's approval or disapproval of that rate—an interstate rate—would have been wholly ineffective. The Kansas commission had approved tariffs 146 and 146-A which specified precise rates for this particular traffic, and had merely given its sanction to any lower rates not under its jurisdiction which might be available to the shipper. In the agreed case it was stipulated that—

"As to any shipment, the shipper or consignee may elect as between the Kansas distance rate and the so-called 'higher Missouri river rate' *as in effect at the date of such shipment,* and may avail himself of whichever of these rates provides the lower transportation cost."

When the higher Missouri river rate ceased to be a lower rate than the specific freight rates governing this traffic promulgated by authority of the Kansas commission it ceased to be an authorized rate for the movement of intrastate shipments. It was no longer applicable in 1921 when these 31 carloads were transported by defendant and its associated and connecting carrier.

Appellant cites statutory provisions (R. S. 66-108, 66-109, 66-117), which require all schedules of freight rates to be filed with the public utilities commission, and which forbid the exaction of rates

at variance with those on file, and forbid changes in those rates without the consent of the commission. But those salutary provisions of statute have to do with matters within the dominion of our local legislature and over which the jurisdiction of our Kansas commission may lawfully be extended. These statutory provisions have no material effect on the higher Missouri river rate, an interstate rate prescribed by federal authority for traffic from Kansas points of origin to Kansas City, Mo. The fact that the Kansas commission assented to the use and application of the higher Missouri river rate by the railway carriers under certain conditions for the movement of local traffic rather than the intrastate rates the Kansas commission itself has prescribed or sanctioned, did not bring that particular interstate rate under the dictation of the Kansas commission in the slightest degree. And yet this elastic and liberal rule of the Kansas local-tariff distance tariffs is perfectly sound, and doubtless serves many a good purpose. It may even now be in operation in various parts of the state, governing much traffic moving exclusively between Kansas points. "Whenever and wherever," says our public utilities commission in effect, "rates lower than those prescribed or sanctioned by our authority (tariffs 146 and 146-A) are available to Kansas shippers, such lower rates, not those prescribed by our specific authority, shall be the proper charges."

Manifestly the Kansas rates must be collected by the carriers and paid by the shippers when no other lawful lower rate is available.

A point is raised that the interstate rate advancement of 35 per cent, which on December 15, 1920, increased the higher Missouri river rate, was never lawfully in force. The Supplement No. 14 to Missouri Pacific Tariff 4746-C, effective December 15, 1920, announced that the advanced rate authorized by federal authority "amends page 144 of the tariff." Defendant argues that such an amendment was ineffective because it failed to add that the earlier rates thus sought to be amended were canceled; and certain rules and decisions of the interstate commerce commission are cited to support that argument. The decisions cited are not in point. The rule as a mere rule of simplicity for the guidance for railway freight clerks who are not lawyers is well enough. As a proposition of law and logic, the contention lacks merit. We have the analogous rule in the Kansas constitution which provides that when a section of a statute is amended the older section shall be repealed (Const. Art. 2,

§ 16), but if the legislature fails to declare such specific repeal it is judicially considered as done nevertheless. (*Case v. Bartholow,* 21 Kan. 300, 308, syl. ¶ 3.) When the interstate commerce commission gave its approval to an advance of the interstate rate specified on page 144 of the Missouri Pacific Tariff No. 4746-C, and that rate was published by Supplement No. 14 thereto, the higher Missouri river rate included therein was thereby advanced from 22.5 cents per hundredweight to 27.5 cents per hundredweight, thereby increasing it above the Kansas rates governing the transportation of these 31 carloads of wheat, and the balance due plaintiff from defendant according to the Kansas local distance tariffs must therefore be paid.

The judgment is affirmed.