No. 27,467.

FLORENCE FULLER, as Administratrix, etc., *Appellee*, v. THE ATCHI-
SON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

(257 Pac. 971.)

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Liability for Injury to Servant—State Employers'
   Liability Act—Settlement and Release—Fraud and Mistake—Evidence*. An
   employee of a railroad company was injured through negligence of the com-
   pany, and died as the result of his injuries. His administratrix sued for
   damages under the state employers' liability act of 1911. The petition
   contained two causes of action: First, for damages accruing to the employee
   in his lifetime; and second, for damages consequent upon his death accruing
   to his personal representative for benefit of his dependents. The company
   pleaded settlement with the employee and release from liability. Plaintiff
   replied that the settlement and release were induced by fraud and mistake.
   A demurrer was sustained to the evidence offered in support of the reply.
   On consideration of the evidence it is held the demurrer was properly sus-
   tained, and recovery on the first cause of action was properly denied.

2. SAME—*Damages Accruing to Personal Representative—Effect of Settlement
   and Release*. After a trial judgment was rendered for plaintiff on the second
   cause of action. *Held*, the settlement and release were a bar to recovery
   on the second cause of action.

Appeal from Franklin district court; HUGH MEANS, judge. Opinion filed
July 9, 1927. Affirmed in part and reversed in part.

*William R. Smith, Owen J. Wood, Alfred A. Scott, Alfred G. Armstrong*,
all of Topeka, and *Fred M. Harris*, of Ottawa, for the appellant.

*Nelson J. Ward*, of Belleville, and *Ralph E. Page*, of Ottawa, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by the administratrix of the
estate of a deceased railroad employee to recover from the railroad
company damages consequent upon personal injuries which he
received and which occasioned his death. Plaintiff recovered, and
defendant appeals. Plaintiff notes a cross appeal from a ruling sus-
taining a demurrer to the evidence offered in support of her reply.

Walter Ross Fuller was a car repairer in the shops of the company
at Ottawa, and on January 11, 1923, was injured while engaged in

Abatement and Revival, 1 C. J. pp. 185 n. 7, 195 n. 81, 196 n. 87. Compro-
mise and Settlement, 12 C. J. p. 344 n. 55. Death, 17 C. J. p. 1246 n. 79. Master
and Servant, 47 L. R. A. n. s. 67; 18 R. C. L. 840. Release, 34 Cyc. pp. 1080 n.
75, 1103 n. 18. Statutes, 36 Cyc. pp. 1071, n. 25, 1072 n. 28, 1074 n. 37, 1076 n. 39.

Fuller v. Atchison, T. & S. F. Rly. Co.

repairing a car. He was taken to a hospital, where he was treated and from which he was released on February 22, 1923. On April 20, 1923, he settled with the company, received $1,150 in full satisfaction of his claim for damages from his injuries, and released the company from liability. He returned to work on May 1, 1923, but was not well or strong. In August he laid off for ten or twelve days. On his return he worked two weeks, and then was obliged to go to the hospital. He died on October 11, 1923, as the result of his injuries.

Fuller's widow, Florence Fuller, was appointed administratrix of his estate. The action, however, was not instituted for the benefit of the decedent's estate, and none of the proceeds, in the event of recovery, would belong to his estate. The plaintiff sued merely as a statutory agent, to collect damages and disburse them to statutory distributees. (*Jeffries v. Mercantile and Elevator Co.*, 103 Kan. 786, 176 Pac. 631.)

The petition contained two causes of action: First, for damages sustained by Fuller in his lifetime on account of pain and suffering, surgical and medical expense, loss of time and diminished earning capacity; second, for damages sustained by Fuller's dependents, his widow, son, and stepdaughter, consequent upon his death. The answer pleaded the release. In reply plaintiff pleaded that execution of the release was induced by fraudulent representations made to Fuller by agents of the company, or else that the release was executed under a mistake of fact. A demurrer was sustained to the evidence offered in support of the reply, and recovery on the first cause of action was denied. After a trial the jury returned a verdict for plaintiff for $5,000 on the second cause of action, and judgment was entered on the verdict.

Plaintiff based her action on the statute of 1911 relating to liability of a railroad company to an employee, or in case of his death to his personal representative for benefit of his dependents, for damages resulting from injury to the employee. The first section of the act reads as follows:

"That every company, corporation, receiver or other person operating any railroad in this state shall be liable in damages to any person suffering injury while he is employed by such carrier operating such railroad, or in case of the death of such employee, to his or her personal representative for the benefit of the surviving widow and children, or husband and children, or children, or mother or father of the deceased, and if none, then the next of kin dependent upon such employee for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such car-

rier, or by reason of any insufficiency of clearance of obstructions, of strength of roadbed and tracks or structure, of machinery and equipment, of lights and signals, or rules and regulations and of number of employees to perform the particular duties with safety to themselves and their coemployees, or of any other insufficiency, or by reason of any defect, which defect is due to the negligence of said employer, its officers, agents, servants or other employees in its cars, engines, motors, appliances, machinery, track, roadbed, boats, works, wharves, or other equipment." (R. S. 66-237.)

The second and third sections (R. S. 66-238 and 66-239) modified the previously existing law relating to the defenses of contributory negligence and assumption of risk. The fourth section (R. S. 66-240) related to limitation of liability by contract rule or regulation, and to set-off of sums contributed to insurance, relief or indemnity paid to the injured employee. The fifth section read as follows:

"That any right of action given by this act to a person suffering injury shall survive to his or her personal representatives, for the benefit of those entitled to recover under this act, but in such cases there shall be only one recovery for the same injury." (R. S. 66-241.)

The sixth section read as follows:

"That all acts or parts of acts so far as the same are in conflict herewith are hereby repealed." (Laws 1911, ch. 239, § 6.)

If the injured employee settles his claim and then dies, there is no right of action for damages which he sustained to survive. In this instance the settlement which Fuller made with the company stood in the way of recovery on the first cause of action. Plaintiff was obliged to avoid it, and defendant contends she had no capacity to sue to avoid it. As indicated, plaintiff did not sue for the benefit of Fuller's estate or anyone deriving benefit from him. She sued for the benefit of a class of persons claiming in their own right by virtue of the statute. Generally, privilege to set aside a transaction induced by fraud or mistake is personal to him who was defrauded or mistaken. Fuller was content to abide by the settlement during his lifetime. Nobody representing him seeks to set it aside, and the question is whether plaintiff's vicarious intervention should be recognized. It does not appear this question was raised in the district court, and the district court merely ruled on sufficiency of evidence to sustain the reply. Therefore the question may be left at one side.

Fuller's attorney was present when the settlement was made. The company was represented by W. E. Goodnow. So far as a member of the Fuller family knew, and so far as the record discloses, Fuller had never seen Goodnow before. Mrs. Fuller testified as follows:

"Mr. Goodnow told my husband that he considered him physically all right with the exception of being a little weak, and he thought he would be able to recover his work back where he was in the first place in a short time. My husband told him that he was in hopes that he would be, that he would soon be back to work. Mr. Goodnow said Doctor Gossett informed him that Walter was all right when he left the hospital with the exception of being weak. There was nothing in particular said at that time about what work my husband was to do, only they just told him that he possibly could get a job back at the yards again, whatever he would be able to fulfill. They never gave him any particular promise of any kind."

Doctor Gossett was the company's physician and surgeon who treated Fuller while he was in the hospital. Fuller's stepdaughter was present when the settlement was made. She was then fourteen years old, and testified at the trial that Goodnow said he had been instructed by Doctor Gossett that Fuller was a well man when he left the hospital, with the exception of being weak, and would soon be well enough to go back to work. She testified further in reference to what occurred when the settlement was made as follows:

"This was two or three months after my father had got out of the hospital. He came out of the hospital February 22, and this was April 20. During that whole time my father hadn't been able to do anything. All that Mr. Goodnow said was that Doctor Gossett told him that he thought when my father came away from the hospital he had recovered, except he was weak."

Plaintiff's evidence disclosed that Fuller had been badly injured. He was crushed by a freight car while he was jacking it up to take the trucks out. When he went home from the hospital he was very weak and in a delicate condition. His collar bone lapped over, and the bone stuck up as though it would break through the skin. He had a big knot on the shoulder bone of each shoulder. When he went home he went to bed, stayed in bed most of the time, and there never was a time when he was free from pain. While he was in the hospital he complained much of his head, and more toward the last when he was supposed to be getting better. After he came home he would hold his head, and put his hands to his head, and say they hurt his temples. Before he returned to work for the company he did no kind of work about the house, and when he went back to work for the company in May he still complained of his head. He had not recovered when he left the hospital. While he was better when he went to work than he was when he came from the hospital, he did not improve very much between February 22 and May 1. Before he was injured he was a large man—not fat—and weighed 190 pounds. When he came from the hospital he weighed 110

pounds. While he afterward gained some strength, he never was the same as he was before he was hurt.

It will be observed that when the settlement was made no, fact relating to Fuller's physical condition at that time was stated by anybody. Goodnow ventured a nonexpert opinion and a prophecy. Whether Doctor Gossett informed Goodnow that, except for being weak when he left the hospital, Fuller was then "all right," or was a "well man," or he "thought he had recovered," Fuller knew better. He knew what he had suffered for fifty-seven days after he left the hospital. So fas as returning to work was concerned, Fuller was merely told he possibly could get a job back, whatever he would be able to fulfill; and knowing his condition, Fuller only hoped he would be able to get his old position back and soon return to work. If Doctor Gossett was mistaken regarding Fuller's condition when he left the hospital, Fuller was not mistaken about it when he signed the release, and if the parties were mistaken when the settlement was made, it was with respect to future duration of a condition from which Fuller was then suffering and from which he hoped he would soon recover. (*Harp v. Red Star Milling Co.*, 121 Kan. 451, 247 Pac. 856, and cases cited in the opinion.) The charge that Fuller was induced to settle by fraud does not require discussion.

Under the law as it existed previous to enactment of the statute of 1911, plaintiff could not recover on the first cause of action, even if the settlement was voidable. Fuller's cause of action for damages which he suffered did not survive. That cause of action went out of existence when he died as a result of his injuries and not as a result of some independent cause, and no one was given privilege to sue for damages which he sustained, either for benefit of his estate or for benefit of dependents. The result is, recovery on the first cause of action was properly denied on any theory of the company's statutory liability.

When the statute of 1911 was enacted the following statute was in force relating to liability of a railroad company for injury to an employee:

"Every railroad company organized or doing business in the state of Kansas shall be liable for all damages done to any employee of said company in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employees, to any person sustaining such damage: . . ." (R. S. 66-235.)

The following statute relating to death by wrongful act was also in force:

"When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action had he lived, against the latter for an injury for the same act or omission. The action must be commenced within two years. The damages cannot exceed ten thousand dollars, and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased." (R. S. 60-3203.)

Under this statute plaintiff could not recover on the second cause of action because Fuller could not have recovered had he lived. He had settled with the company and released it from liability. Plaintiff contends this statute conflicts with section 1 of the act of 1911 (R. S. 66-237, quoted above), which is the latest expression of the legislative will; the section was derived from the federal employers' liability act; that act has been interpreted by this court to create two separate and distinct liabilities, one to the injured person, and one to his personal representative for the benefit of dependents; settlement by the injured person of his claim does not bar recovery by his administrator on the other (*Goodyear, Administratrix, v. Railway Co.*, 114 Kan. 557, 220 Pac. 282); and the same interpretation must be given to the state act that was given to the federal act.

Every subject embraced in the act of 1911 was already dealt with in some form by statute or by judicial decision based on statute, except abolition of contributory negligence and assumption of risk as defenses and set-off, which were new. The new subjects were appropriated from the federal employers' liability act, a copy of which appears as appendix "B" to the opinion in the Goodyear case. In some other respects the federal act was adapted, and some of its phraseology was adopted. When the Kansas statute was enacted, the federal act had not been interpreted, and nobody knew what the test of application to specific cases might reveal. No effort was made to carefully revise existing law, and the statute concluded with a confession of ignorance of its consequences—"All acts or parts of acts, so far as the same are in conflict herewith, are hereby repealed." The futility of this nonsensical provision to accomplish repeal of anything, either expressly or by implication, has been pointed out many times. It was left to this court, therefore, to find out what acts, sections, sentences or phrases, scattered through the

statute book, were abrogated or qualified, or were restricted or enlarged, and to discover what gaps left in the new law might be filled with provisions of the old law. The result is, the problem of interpreting the Kansas act is very different from the problem of interpreting the federal act. The federal act entered a new field. It had no background of existing law to which it had to be related. The Kansas act had to be fitted into an existing scheme of law. (*Harwood v. Railway Co.*, 101 Kan. 215, 171 Pac. 354.) So far as the provisions of the new law were the same as the provisions of the old, they were to be regarded as continuations, and not as new enactments (R. S. 77-201, *First*) ; and in a certain respect the very first section of the 1911 law is a continuation of a statute enacted in 1874. (*Rockhold v. Railway Co.*, 97 Kan. 715, 156 Pac. 775.) In case of repugnancy, the old law is obliged to yield. Repeals by implication, however, are not favored. Repugnancy must be not merely plain, but must be irreconcilable, and if provisions apparently in conflict may be harmonized, both must be given effect.

As applied to the second cause of action involved in this case, the subject of R. S. 66-237 is this: If a railroad employee suffer an injury through negligence of the company's officers, agents, or employees, which results in death, the company is liable to the employee's personal representative for the benefit of certain persons who normally might suffer pecuniary loss on account of his death. When the section was enacted, that liability existed by virtue of R. S. 60-3203 and R. S. 66-235. While a lot of words were used in enumerating beneficiaries, nobody was included who was not included in 60-3203—widow, children, and next of kin. By analogy of the statute relating to meaning of words denoting gender (R. S. 77-201, *Third*), widow would include surviving husband. Father and mother are next of kin after children, and in 1906 this court held the defendant in this case liable to parents for death of their son, although they were nonresident aliens. (*Railway Co. v. Fajardo*, 74 Kan. 314, 86 Pac. 301.) The limitation to dependents could scarcely be of practical effect, since without dependency, damages, which must always be proved, would be nil. Whether any causes of injury not involving negligence were added to the enumeration of wrongful acts or omissions is not important. The result is, so far as meaning of words employed is concerned, the distinct and specific liability created to come into existence at death of the em-

ployee is the same in all essential respects under the old law and the new.

The omissions from the new law are very significant. R. S. 60-3204 was in force when the new statute took effect, and reads as follows:

"That in all cases where the residence of the party whose death has been or hereafter shall be caused as set forth in the next preceding section is or has been at the time of his death in any other state or territory, or when, being a resident of this state, no personal representative is or has been appointed, the action provided in said section may be brought by the widow, or where there is no widow, by the next of kin of such deceased."

Nothing of the kind appears in the new law. Was R. S. 60-3204 repealed with respect to liability of railroad companies by the act of 1911 because by the terms of that act nobody but an administrator may sue? The court regards the two statutes as *in pari materia,* and under the rules for interpretation which have been stated, R. S. 60-3204 was not repealed by implication.

R. S. 60-3203 provided that action to enforce liability for death by wrongful act must be brought within two years. Was that portion of the section repealed by the act of 1911 because that act contained no limitation upon time within which liability must be enforced? The court has held otherwise. (*Harwood v. Railway Co.,* 101 Kan. 215, 171 Pac. 354.)

R. S. 60-3203 provided the damages recovered in an action to enforce liability for death by wrongful act should not exceed $10,000. Was that portion of the section repealed by the act of 1911 because that act omitted all reference to amount of damages? While the question was not directly involved in the Harwood case, the court considered it in connection with the subject of time within which action must be commenced:

"In the death statute there is a provision limiting the amount of damages that may be recovered for death to ten thousand dollars, but the employer's liability act does not place any limitation upon the amount of recovery, nor does it refer to the question of limitation of amount. The death statute has the express limitation, which is brought directly in question in this action, that the action for death must be brought within two years, while the employer's liability act makes no reference whatever to the time in which an action may be brought. While the later act is much broader in its scope than the earlier one, and while both cover some of the same subject matter, there are important provisions of the earlier one not covered by the later one, and manifestly such provisions have not been repealed." (p. 219.)

R. S. 60-3203 contains a provision that the damages recoverable in an action for death by wrongful act shall be distributed in the same manner as personal property of the deceased. Nothing of the kind is contained in the statute of 1911. Is there then no rule for distribution among beneficiaries of damages recovered under that statute? The answer is obvious.

R. S. 60-3203 contained another limitation upon enforcement of liability for death by wrongful act which was omitted from the statute of 1911. The administrator may recover if the injured person might have maintained an action, had he lived, for the same act or omission. The section has stood for many years, and evidenced a theory of liability which was well understood and which formed a part of the settled policy of the state. What was there about the words "liable in damages to any person suffering injury . . . or in case of death . . . to his or her personal representatives," to indicate that only three of four express limitations on recovery contained in 60-3203 were to remain in effect, that the fourth was repealed, that a new theory of railroad liability had been adopted, and that the existing public policy of the state with respect to the subject had been abandoned? The answer to that question also seems obvious.

It must not be forgotten that we are not interpreting the federal law, or interpreting the Kansas act according to the interpretation which, after much study and conflict of opinion, has been placed on the federal law. We are interpreting the Kansas act as it came from the legislature in 1911, to take its place in a body of existing law, no provision of which was pointed out by the legislature as repealed. In the Harwood case, the court in discussing repeal by implication quoted from the opinion in the case of *Stephens v. Ballou,* 27 Kan. 594, as follows:

"If the provisions of the old act and of the new can be reconciled by any possible mode of interpretation or construction, if the old act and the new can both be given force and effect, according to their terms and under any circumstances, then it should never be held that one overturns and destroys the other, but both should be given full force and effect." (p. 601.)

No difficulty is encountered in reconciling the old act with the new, and the court is not permitted to declare that the new act overturns and destroys the other.

Some of the existing obstacles to recovery by the injured person, and therefore to recovery by his administrator, were considered, and

were wholly or partially removed by the 1911 statute. The fellow-servant rule was abrogated, as it had been since 1874 by the legislation which developed into R. S. 66-235. It was provided that contributory negligence of the injured person should not bar recovery in an action for damages resulting from his death. It was further provided that assumption of risk should not be a defense in certain cases. The statute was silent, however, concerning the common defense available under R. S. 60-3203, that the company had settled once for all with the injured person in his lifetime. This was an important subject. If the legislature intended to change the law respecting it, a few simple words would have accomplished the result. It chose not to express itself, and the provision is not repealed by implication from silence.

The statute of 1911 restated liability in its own way, with some prolixity and redundancy. It put into the form of the statutory provisions some rules resting on judicial decision, as that a receiver for a railroad company is under the same liability as the company, and that contracts for exemption from statutory liability are void. By means of express provision it made some important changes in the law. It contained a section relating to survival of whatever right of action was given, but provided there should be but one recovery for the same injury. It concluded with a repealing section; which had no more force than it would have had if it read, "All acts and parts of acts, so far as the same are not in conflict herewith, are not repealed." It became a part and only a part of the statutory provisions relating to death by wrongful act, and became subject to those provisions in all respects not differentiated by the act itself. Read section by section and construed as a whole, the statute of 1911 is perfectly compatible with R. S. 60-3203, and recovery on the second cause of action should have been denied.

The judgment of the district court in favor of defendant on the first cause of action stated in the petition is affirmed. The judgment of the district court in favor of plaintiff on the second cause of action is reversed, and the cause is remanded with direction to enter judgment for defendant.