No. 32,603

GORDON DUNN et al., as Administrators, etc., *Appellants,* v. C. H. JONES et al., *Appellees.*

(53 P. 2d 918)

Opinion filed January 25, 1936.

*E. R. Sloan, W. Glenn Hamilton, F. A. Sloan* and *Eldon R. Sloan,* all of Topeka, for the appellants.

*T. M. Lillard, O. B. Eidson* and *Philip H. Lewis,* all of Topeka, for the appellees; *Benjamin F. Hegler, George Siefkin, George B. Powers,* all of Wichita, and *Douglas Hudson,* of Fort Scott, of counsel.

The opinion of the court was delivered by

BURCH, C. J.: The action was one by the personal representatives of Edward S. Dunn, deceased, to recover from C. H. Jones damages consequent on Dunn's death, which resulted from injuries inflicted by Jones in negligent operation of a motor truck. Damages were also claimed for injury to Dunn's property in the same accident. Joined with the action against Jones was another against the State Farm Mutual Automobile Insurance Company on a policy of insurance issued to Jones as a contract motor carrier, pursuant to the statute regulating motor carriers. The insurance company demurred to the petition on two grounds; first, misjoinder of causes of action, and this ground was confessed. Second, the action was prematurely brought against the insurance company; cause of action had not accrued for the reason cause of action against Jones had not been established by judgment. The demurrer on this ground was sustained, and plaintiffs appeal. The proceedings against Jones personally are not now material.

The petition alleged that Jones was granted a certificate by the public service commission to engage in the business of contract motor carrier, and as a condition to the granting of his application for a certificate, Jones filed with the public service commission the

policy sued on, which was accepted by the public service commission. The petition further alleged that Jones was operating a motor truck on a state highway, pursuant to the permit, that Dunn was driving an automobile on the highway, and that Jones negligently operated the truck in such a manner that the truck struck the automobile, wrecked it, and fatally injured Dunn. A copy of the policy was attached to the petition.

The policy protected Jones against legal liability resulting from accident by reason of ownership or use of the truck, on account of injury to or the death of one person, and on account of injury to property. The policy, however, expressly provided that no action to recover for any loss covered by the policy, arising or resulting from claim upon Jones for damages, should be sustainable, unless by Jones, and after the amount of damages for which he might be liable had been determined, either by final judgment against him, or by agreement by Jones and the claimant, with the company's assent.

The policy bore an indorsement, duly executed by the insurance company, which was made part of the policy. The form of endorsement was prescribed by the public service commission, pursuant to its power to make rules governing motor carriers. The endorsement enlarged liability of the insurance company by permitting action against the insurance company by one sustaining injury covered by the policy, on failure of the insurance company to pay any final judgment for such injury. The result is, the policy permitted action by plaintiffs against the insurance company, but only on default of the insurance company to pay any judgment recovered by plaintiffs against Jones.

The public service commission may not make any rule regulating motor carriers contrary to the statute, and we are remitted to the statute to ascertain what kind of insurance policy a motor carrier must provide.

In 1925 the legislature passed an act (Laws 1925, ch. 206), the title of which reads:

"An act providing for the supervision, regulation and conduct of the transportation of persons, freight and property for hire over the public highways of the state of Kansas by motor vehicles; conferring jurisdiction upon the public utilities commission to license and regulate such transportation; providing for the enforcement of the provisions of this act and for the punishment for violations thereof; and repealing all acts inconsistent with the provisions of this act."

The substantive portion of the act consisted of eleven sections and dealt with motor-carrier transportation on public highways, to the extent regulation of that kind of traffic had developed at that time. Section 7 reads:

"No certificate of convenience shall be issued by the public utilities commission to any motor carrier until and after such motor carrier shall have filed with, and the same has been approved by, the public utilities commission of this state, a liability insurance bond in some insurance company, or association authorized to transact business in this state, in such a sum as the public utilities commission may deem necessary to adequately protect the interests of the public with due regard to the number of persons and amount of property involved, which liability insurance shall bind the obligors thereunder to make compensation for injuries to persons and loss of or damage to property resulting from the negligent operation of such motor carrier. Said public utilities commission shall also require a satisfactory bond in such penal sum and conditioned on the payment of all fees, taxes or charges which may be due the state or any governmental unit in the state under any permit of operation and for the faithful carrying out of any permit granted by said public utilities commission: *Provided,* That any motor carrier coming under the provisions of this act who shall furnish annually to the public utilities commission satisfactory proof and evidence of such motor carrier's financial ability to properly protect the interest of the public and pay compensation for injuries to persons and loss or damage to property on account of or arising out of negligent operation of such motor carrier's business, shall not be required to furnish any liability insurance bond therefor. No other or additional bonds or licenses than those prescribed in this act shall be required of any motor carrier by any city or town or other agency of the state."

In 1929 the legislature passed an act (Laws 1929, ch. 220), the title of which reads:

"An act relating to public utilities and common carriers, providing for rehearings and for review of orders or decisions of the public service commission, and repealing section 66-118 of the Revised Statutes of 1923, and all acts and parts of acts in conflict herewith."

This act related to the single subject of rehearings and reviews of orders and decisions of the public service commission affecting public utilities and common carriers generally. Its relation to motor carriers on public highways, when enacted and at this time, is of no present concern.

In 1931 the legislature passed an act consisting of twenty-five substantive sections (Laws 1931, ch. 236) relating to transportation by motor vehicle over public highways under the following title:

"An act relating to transportation by motor vehicles over the public highways of Kansas, and repealing all parts of chapter 206 of the Laws of 1925

and chapter 222 of the Laws of 1929 (being sections 66-196 to 66-1,107, inclusive, of the 1930 Supplement to the Revised Statutes of Kansas, 1923), inconsistent or in conflict with this act."

The utterly nonsensical references to repeal in the title and a corresponding repealing section in the body of the act are, of course, to be disregarded (*Fuller v. Atchison, T. & S. F. Rly. Co.*, 124 Kan. 66, 71, 257 Pac. 971), and the effect of the act on other statutes must be determined from its provisions.

Even a casual inspection of the act of 1931 reveals that, in form and substance, it was a complete revision of the motor-carrier law of this state, extended to cover subjects not dealt with in the law of 1925. It was designed to utilize the benefit of experience in regulating a business which had rapidly developed to unforeseen proportions. A detailed comparison of the act of 1931 with the act of 1925 is not necessary.

The subject of section 7 of the act of 1925 received specific legislative consideration in 1931. The phraseology was occasionally employed where applicable, but the section was completely revised and was replaced by section 21 of the act of 1931, which reads:

"No certificate or license shall be issued by the public service commission to any 'public motor carrier of property,' 'public motor carrier of passengers,' 'contract motor carrier of property or passengers' or 'private motor carrier of property,' until and after such applicant shall have filed with, and the same has been approved by, the public service commission, a liability insurance policy in some insurance company or association authorized to transact business in this state, in such reasonable sum as the commission may deem necessary to adequately protect the interests of the public with due regard to the number of persons and amount of property involved, which liability insurance shall bind the obligors thereunder to pay compensation for injuries to persons and loss of or damage to property resulting from the negligent operation of such carrier. No other or additional bonds or licenses than those prescribed in this act shall be required of any motor carrier by any city or town or other agency of the state."

Aside from the fact that section 21 appears in a revisory act, old section 7 was so thoroughly revised that it is now nugatory.

The insurance policy required by the act of 1931 is a liability insurance policy which shall bind the insurer to pay compensation for injury to person and loss of or damage to property, resulting from negligent operation by the motor carrier. What is a liability insurance policy?

A liability insurance policy is a policy of the kind indicated by the qualifying word "liability." "Liable" means bound or obliged

by law. "Liability" is the condition of being liable. A liability insurance policy is one that indemnifies against the condition of being liable, and such a policy is to be distinguished from one which indemnifies against ultimate established loss, resulting from final enforcement of liability.

There are insurance policies and insurance policies. The nature of a particular policy must be ascertained by interpretation of its provisions. The distinction between policies insuring against liability and policies insuring against loss is made clear, and some of the consequences of the distinction are discussed in the opinion in the case of *Blanton v. Cotton Mills Co.*, 103 Kan. 118 (1918), 172 Pac. 987. *Brandon v. St. Paul Mercury Indemnity Co.*, 132 Kan. 68 (1931), 294 Pac. 881, is a parallel case, in which the distinction between obligation for liability and obligation for loss was recognized. See, also, the article on Liability Insurance in 36 C. J. (1924) §§ 3, 4, 74, 75, 76.

Besides specifying the kind of insurance, by a description having definite meaning in the law of this state, section 21 of the 1931 act indicates liability insurance. The purpose of the insurance is adequate protection to members of the public from negligent conduct of the motor-vehicle operator, not simply protection to the negligent operator against judgments rendered against him, and what the policy must assure is recoverable compensation to a member of the public for injury to person and loss of or injury to property.

The legislature might have provided that no liability should attach to the insurer until judgment had been rendered against the motor carrier for damages resulting from his negligence. It did not do so. In the Blanton case the terms of a policy were considered, and it was held the policy was a liability policy. In this instance, the terms of the statute are considered. It required a liability policy, and the following, from the opinion in the Blanton case, is pertinent:

"These provisions show that the obligations of the contract rested upon the insurer from the time the accident occurred down until the liability resulting from them was settled and discharged." (p. 123.)

Obligation to pay compensation accruing at the time of accident resulting in injury is enforceable by the injured person by action in the usual way.

The insurance company says the statute does not fix the time when compensation shall be paid. By fixing the time when liability

accrues, the notion that time of discharge of the obligation must be postponed until judgment is rendered against somebody else is excluded.

Section 7 of the statute of 1925 and section 21 of the statute of 1931 are both printed in the 1933 supplement to the revised statutes of 1923. The insurance company assumes both statutes are in force. The revisor of statutes does not presume to determine what statutes are rendered nugatory by later enactments, and what are not, and print some and leave others out. He makes cumulative supplements.

Based on the assumption noted, the insurance company contends the proviso of old section 7, relating to self-insurance, still stands, and some inferences are drawn accordingly. If the proviso should stand, the self-insurer would be a self-insurer against liability as hereinbefore defined, and not a self-insurer against loss. Old section 7, however, is repealed in two ways. First, by revision of the entire motor-carrier law in 1931, with the result there is no longer any 1925 law. (*State, ex rel., v. Studt,* 31 Kan. 245, 1 Pac. 635; *Bridge & Iron Co. v. Labette County,* 98 Kan. 292, 305, 158 Pac. 8; *Topeka v. McCabe,* 79 Kan. 329, 99 Pac. 602; *Great Western Portland Cement Co. v. Public Service Comm.,* 121 Kan. 531, 247 Pac. 881; *Hauserman v. Clay County,* 89 Kan. 555, 132 Pac. 212.) Second, the unit of a legislative act is the section. When a section of a statute is amended, it is the duty of the legislature to repeal the section. (Constitution, art. 2, § 16.) If the legislature does not perform its duty, the section is nevertheless repealed. (*Missouri Pac. Rld. Co. v. Red Star Milling Co.,* 122 Kan. 122, 127, 251 Pac. 417.) There is no such thing as fractional amendment of a section, leaving part of it in force.

It would be idle to contend old section 7 was not amended by section 21 of the later act. One form of amendment was by omission of the proviso of old section 7, and comparison of that section with new section 21 is useful only as illustrating progress in the regulation of motor-carrier transportation on public highways.

The policy actually filed with the public service commission has been described. It is not in form and verbal content a liability policy. For purpose of this lawsuit, it is nevertheless a liability policy. It was filed to comply with a condition precedent to obtaining the benefit of the motor-vehicle-transportation act. It accomplished the purpose for which it was intended and was the means of securing those benefits. The law is read into it, and the policy

has precisely the same effect as if it bore a rider, stating that the terms of the policy are to be construed as complying with the statute.

The principle involved was stated and applied in the case of *Farmer v. Rutherford*, 136 Kan. 298, 15 P. 2d 474. The action was one against a sheriff and the surety on his bond, for damages resulting from mistreatment of a prisoner in the sheriff's custody—conduct constituting breach of the kind of bond the statute required the sheriff to give. The bond given by the sheriff did not in terms comply with the statute and did not in terms cover the conduct. Comparison of the bond with the bond prescribed by statute to be given by a county treasurer showed that a county treasurer's bond was used, the word "sheriff" having been inserted where the word "treasurer" appeared. Following the general rule applicable in such cases, it was held the statutory obligation of a sheriff would be read into the bond. The opinion in the case sufficiently reviewed authorities.

The insurance company seeks to avoid effect of the decision in the Farmer case by making distinctions which do not distinguish. The subject of joint liability of principal and surety upon instruments of security is discussed—something which has nothing to do with the subject of disregarding words used in an instrument and reading into the instrument what the law requires shall be there.

The insurance company says there is a special statute relating to official bonds, giving a right of action to anyone injured by official misconduct. That is true, but the object and purpose of section 21 was to give a right of action against the insurer directly, to a member of the public injured in person or property through negligence of the motor carrier.

Other attempts to distinguish the Farmer case need not be noticed. The court adheres to the Farmer case as establishing method of determining what the contract sued on was.

The insurance company says the statute has received operative interpretation, as shown by the endorsement on the policy prescribed by the public service commission. The public service commission simply misconceived the meaning of the statute, and no amount of misinterpretation can change the statute.

Attention is called to the fact that a bill amending the section of the code of civil procedure relating to joinder of defendants, which in this instance would have permitted joinder of Jones and the in-

surance company, was defeated in the 1933 legislature. Had the bill passed, the first ground of the insurance company's demurrer would not have been good. Liability of neither Jones nor the insurance company would have been increased or diminished.

The insurance company makes the question-begging statement that to permit action against it now would impair the obligation of contract. The fallacy is patent.

There are decisions by other courts relating to the nature of the insurance company's liability in cases of this character. · Time and space forbid review of the cases, which would necessitate exemplification of statutes, of policies and of opinions. Two cases quite analogous to this one fully support the conclusions which have been expressed: *Curtis v. Michaelson*, 206 Ia. 111, 219 N. W. 49; *Jacobsen v. Howard*, 164 Okla. 88, 23 P. 2d 185. No analogous case to the contrary has been cited to the court.

The judgment of the district court is reversed, and the cause is remanded with direction to overrule the unconfessed portion of the demurrer to the petition.