## BAKER v. GLENN et al., State Tax Comission of Kentucky.

### No. 3966.

District Court, E. D. Kentucky.

Jan. 21, 1933.

Rogers & Rogers, of Covington, Ky., and Edward J. Tracy, of Cincinnati, Ohio, for plaintiffs.

Bailey P. Wootton, Atty. Gen., and Gardner K. Byers, Asst. Atty. Gen., for defendants.

J. H. McChord, of Louisville, Ky., amicus curiæ.

Before HICKENLOOPER, Circuit Judge, and COCHRAN and HOUGH, District Judges.

## PER CURIAM.

Plaintiffs, who are private contract carriers by automobile truck in the state of Kentucky, assert the unconstitutionality of the Act of the General Assembly of Kentucky, approved March 17, 1932 (chapter 104, Acts of 1932, p. 514 et seq.), regulating transportation for hire of property by motor vehicles on the public highways of that state. It is contended that this act is unconstitutional on the following grounds: (1) Article 3, §§ 2, 3, and 4, require that all those who wish to engage in the business of private contract carriers by automobile must secure a permit so to do from the state tax commission, it being said that the right is reserved to grant or refuse permits at will; (2) under article 4, § 8, it is provided that no permit shall be issued until there has been filed with and accepted by the commission an indemnity bond or insurance policy which shall provide, by such terms, conditions, and provision and in such penal sums or maximum amounts as the commission may deem necessary, "for the reasonable protection of the patrons of the operator of the motor vehicle for hire and of the public in the collection of damages for which the operator may be liable by reason of the operation of any motor vehicle for hire"; (3) article 4, § 26, exempts from the provisions of the act motor vehicles for hire, designed primarily for the transportation of property, provided such motor vehicle, when unloaded, weigh not more than 5500 pounds, and also those motor vehicles which are owned or leased by a nonprofit, co-operative association, carrying only property belonging to

the association or its members; and (4) article 3, § 5, forbids any contract carrier to give or cause "any undue or unreasonable advantage or preference to those whom he serves as compared with the patrons of any common carrier, * * * or to subject the patrons of any such common carrier to any undue or unreasonable discrimination or disadvantage, or by unfair competition to destroy or impair the service or business of any common carrier * * * and, to the end that the Commission may enforce these provisions, each such contract carrier shall maintain on file with said Commission a statement of his charges, and of such other matters as said Commission may require." Article 3, § 6, provides that the commission, upon complaint or upon its own motion, may determine if any rate or practice of any contract carrier causes a violation of article 3, § 5, and that it shall then prescribe the rate, fare, charge, or the maximum or minimum, or maximum and minimum, thereafter to be charged, and the classification, regulation, or practice thereafter to be observed by such contract carrier, provided that nothing in the act shall be construed to require the commission to fix the same rates for motor carriers as are or may be fixed for carriers engaged in other modes of transportation. By article 3, § 7, the commission is given authority to issue general and special orders regulating and controlling the business of contract carriers, their rates and practices, as it may deem reasonably necessary to prevent violation of article 3, § 5, of the act.

In Hodge Co. v. Cincinnati, 284 U. S. 335, 52 S. Ct. 144, 145, 76 L. Ed. 323, the Supreme Court laid down the general principle that the state has power, for the safety of the public, to regulate the use of its public highways, and that it may prohibit or condition as it deems proper the use of such highways as a place for the carrying on of private business. It was there held that the use of highways as a place for carrying on private business was "a special and extraordinary use materially differing from operation of automobiles or trucks by owners or their chauffeurs in the usual way for private ends," and that such a user of the highways might be required to secure a license and to deposit policies of indemnity insurance for the protection of persons and property against negligent operation.

In connection with the first alleged ground of unconstitutionality of the Kentucky act, it is contended by plaintiffs that the doctrine of Hodge Co. v. Cincinnati has

no application, for the reason that the commission has the power to grant or refuse permits at will. The express grant of power appears in article 3, § 4, where it is provided that, upon payment of the fees prescribed in the act, the commission "shall have power" to issue to the applicant a permit "provided the applicant has established to the satisfaction of said Commission that the privilege sought will not endanger the safety of the public or interfere with the public's use of the highways or impair the condition or maintenance of such highways." From this provision we do not think that it is properly to be inferred that the commission will act arbitrarily or refuse a permit to any applicant who has brought himself within the provisions named. The plaintiffs in the instant case have not applied for a permit, and the case therefore falls within the doctrine announced in Continental Baking Co. v. Woodring, 286 U. S. 352, 52 S. Ct. 595, 76 L. Ed. 1155, 81 A. L. R. 1402, that apprehension that the commission may, under this authority, invade the constitutional rights of private carriers by regulations lawful only in respect of common carriers, that is, by treating an application for a permit as an application for a certificate of convenience and necessity, is not ground for injunction, in the absence of any action or threat of action on its part.

As to the second ground of alleged unconstitutionality, it is conceded that the state has power to require the filing of a policy of indemnity insurance to protect *the public* in the collection of damages for which the operator may be liable by reason of the negligent operation of his motor vehicle, and we are advised that the plaintiffs do not now urge the invalidity of the statutes upon the ground that they require private contract carriers to give a bond for the protection of *patrons,* and that the state disclaims the right to require such a bond. This question is therefore passed without determination.

Coming to a consideration of the exemptions from the provisions of the act provided by article 4, § 26 (3, 4), we think that these exemptions are also well within the discretionary power of permissible classification. The article in question provides that a motor vehicle owned or leased by a nonprofit, co-operative association, and carrying only property belonging to the association or its members, "shall be considered to be an owner's truck," as in fact it seems to us, in a very true sense, to be. These associations are really a banding together of numerous

882

individuals engaged in the same business for their common good. The enterprise is a joint one, usually limited to the producers of agricultural products. The analogy between transportation by such associations, and the transportation by a farmer of his own live stock and farm products to market, is so close, both in respect of frequency and character of use, as to make applicable, we think, the distinction stated in Continental Baking Co. v. Woodring, supra, at pages 371, 372, 373, of 286 U. S., 52 S. Ct. 595. We are likewise of the opinion that the exemption of vehicles weighing not more than 5,500 pounds comes within the scope of permissible classification. Cf. Sproles v. Binford, 286 U. S. 374, 52 S. Ct. 581, 76 L. Ed. 1167.

In respect of the last-stated ground of alleged unconstitutionality, that is, that the state assumes the power to regulate rates and practices of private contract carriers, and forbids such carriers to give or cause any undue or unreasonable advantage or preference (obviously referring to rates) to those whom he serves as compared with the patrons of any common carrier, or by unfair competition (again obviously referring to rates) to destroy or impair the service or business of any common carrier, our decision is controlled by the case of Stephenson v. Binford, 287 U. S. 251, 53 S. Ct.181, 188, 77 L. Ed. ——. In Sproles v. Binford, supra, also, the Supreme Court has laid down the principle that the state has the right in such general motor vehicle regulations to foster a fair distribution of traffic as between the highways and the railroads, to the end that all necessary facilities shall be maintained and that the public shall not be inconvenienced by inordinate uses of the highways for purposes of gain. In Stephenson v. Binford, it was expressly held that the state had a right to prescribe minimum rates not less than those prescribed for common carriers for substantially the same service. This holding was based upon the premise that such rate regulation "has a definite tendency to relieve the highways by diverting traffic from them to the railroads." In the present case complaint is not made that the plaintiffs are deprived of any property rights by the grant of power to the commission to fix maximum rates, or that the plaintiffs in respect to their own business are unable to comply with the requirements as to filing with the commission a statement of their charges, they being engaged principally in the operation of a "milk route" up-

on which they daily pick up cans of milk from various farms and return the empty cans to such farms; but the gist of the complaint is that they are deprived of their free right to contract in competition with the railroads, and that this is solely for the benefit of the railroads and without any relationship to the general public or the use of the highways.

We do not attempt to reconcile Stephenson v. Binford with the earlier decisions of the Supreme Court as to those businesses which may be regulated by the state, as being impressed with a public interest. See Michigan Public Utilities Commission v. Duke, 266 U. S. 573, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105; Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286; Frost Trucking Co. v. Railroad Commission, 271 U. S. 583, 46 S. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457; Tyson v. Banton, 273 U. S. 433, 47 S. Ct. 426, 71 L. Ed. 718, 58 A. L. R. 1236; Smith v. Cahoon, 283 U. S. 553, 51 S. Ct. 582, 75 L. Ed. 1264; New State Ice Co. v. Liebmann, 285 U. S. 262, 52 S. Ct. 371, 76 L. Ed. 747; and compare, for a general statement of the principles involved, Wolff Packing Co. v. Court of Domestic Relations, 262 U. S. 522, 43 S. Ct. 630, 67 L. Ed. 1103, 27 A. L. R. 1280. Nor shall we attempt to distinguish the right of a citizen to use the highways as agent for another from the right of the principal to use them for the same ultimate purpose, or to differentiate between the use of a highway by a resident of the state under a contract of carriage with another citizen and the similar use by such other citizen, both seemingly uses for profit and for the private purposes of the user. It is sufficient that in Sproles v. Binford, supra, and Stephenson v. Binford, supra, the Supreme Court has approved the power of the state to exercise this specific type of regulation in respect to the identical business here involved. Nothing remains for this court but to follow these later decisions.

The case comes on to be heard both upon motion of the plaintiffs for an interlocutory injunction and motion of defendants to dismiss the bill of complaint. For the reasons above stated, the motion for an interlocutory injunction is denied, and the motion to dismiss the bill of complaint is granted. An order may be prepared by counsel to carry this into effect.