### FLOWERS v. FIDELITY & CASUALTY CO. OF NEW YORK.

#### No. 3280.

Circuit Court of Appeals, Tenth Circuit. July 11, 1946.

Rehearing Denied Aug. 17, 1946.

Lawrence Weigand, of Wichita, Kan. (Claude I. Depew, W. E. Stanley, William C. Hook, and Lawrence Curfman, all of Wichita, Kan., on the brief), for appellee.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action for damages by appellant, Mary Flowers, herein called the plaintiff, brought directly against the Fidelity & Casualty Insurance Company of New York, the liability insurance carrier [1] for the DeCoursey Cream Company,[2] for injuries sustained from the operation of one of its trucks. Plaintiff has appealed from the judgment of the trial court sustaining a motion for a directed verdict for the company.

The facts are simple and not in dispute. The DeCoursey Cream Company, a private carrier within the definition of the Kansas Motor Vehicle Act,[3] among other places operates a creamery station in Wichita, Kansas. The truck in question was domiciled in Wichita, and was used in transporting the company's dairy products to Anthony, Kansas, a distance of approximately seventy-five miles. On the day of the accident, the truck was on a return trip from Anthony to Wichita. There is no claim that it was being operated otherwise than in the regular course of the company's business. The accident occurred before the truck had completed its journey, but after it had reached the city limits of Wichita.

The Motor Vehicle Carriers Act of Kansas is a comprehensive act regulating the uses and operations of motor vehicles upon the highways of Kansas. It concerns itself primarily with taxation and public safety. In the interest of brevity, only such sections of the Act as affect the issues in this case will be discussed. G.S. 66-1,109, among others, exempts from the provisions of the Act "(b) * * * private motor carriers who operate within a radius of twenty-five miles beyond the corporate limits of such city * * *." As

Paul R. Kitch, of Wichita, Kan. (Howard T. Fleeson, Homer V. Gooing, and Wayne V. Coulson, all of Wichita, Kan., on the brief), for appellant.

[1] Herein called the insurance carrier.
[2] Herein called the company.
[3] Kansas G.S. 66-1, 128.

far as private carriers are concerned, G. S. 66-1,128 provides that no license shall be issued until such carrier shall have filed a liability bond approved by the Public Service Commission to adequately protect the interest of the public against loss resulting from the operation of such carrier.

■ The DeCoursey Cream Company made application for the necessary license, filed its bond, which was approved by the Commission, and received its license to operate as a private carrier. The Supreme Court of Kansas has held in an unbroken line of decisions, beginning with Dunn v. Jones, 143 Kan. 218, 53 P.2d 918, that the statutory policy required of a private motor carrier by the Act was a liability policy, and that an action for damages for loss resulting from the operations of the licensed carrier was maintainable directly against the insurance carrier. The trial court's judgment dismissing the action was based on its legal conclusion that the Act "does not apply to vehicles operated by and as private motor carriers after such vehicles reach a point within twenty-five miles of the corporate limits of the city where such vehicles are domiciled."

The constitutionality of the Kansas Motor Vehicle Act has been considered by the federal courts in two cases.[4] In both cases the constitutionality of the Act was upheld. The decision in the Woodring case was affirmed by the Supreme Court in Continental Baking Co. v. Woodring, 286 U.S. 352, 52 S.Ct. 595, 76 L.Ed. 1155, 81 A.L.R. 1402. The Supreme Court of Kansas apparently has not interpreted or passed upon the constitutionality of the Act. The Woodring case is largely relied upon to sustain the judgment of the lower court.

While other questions were considered in the Woodring case, the main attack on the constitutionality of the Act was centered upon the tax levying provisions of the Act. It was there argued that a classification which exempted private carriers operating within a radius of twenty-five miles of a city from the payment of a mileage tax, while subjecting those private carriers who operated for greater distances from the city limits to the tax, was arbitrary and unreasonable. A three-judge court construed the Act to mean that private carriers, whether limiting their operations to the twenty-five mile zone surrounding the city or going beyond it, were exempt from the provisions of the Act within the twenty-five mile zone, and that none were required to pay the tax for the first twenty-five miles of operation from the city limits where the truck was domiciled. So construed, the court, one judge dissenting, found no difficulty in upholding the constitutionality of the Act against a charge of arbitrary classification.

From this, it is argued that private carriers are likewise exempt from the safety provisions of the Act within the twenty-five mile zone and that within said zone no liability policy is required by the Act from any private carrier even though his operations extend far beyond such zone.

The Public Service Commission, charged with the duty of administering the Act, had interpreted it to exempt all private carriers from the payment of the tax on the first twenty-five miles of operation, and had collected no tax for such mileage from those private carriers who operated beyond this zone. This administrative interpretation was alluded to and largely relied upon by the three-judge court, as well as by the Supreme Court, in upholding the constitutionality of the Act. The Supreme Court in its opinion calls attention to the administrative construction placed on the Act with regard to the collection of the tax within this twenty-five mile zone, and to the further fact that the three-judge court in its opinion agreed with the construction of the Commission, and then states that: "On this construction it cannot be said that there is a fatal defect in definition."

■ There is language in Judge McDermott's opinion which would tend to sustain the trial court's conclusion and argument that is made on this appeal that the regulatory provisions of the Act for the safety of the public do not apply to the operations of any private carrier within the

4 See Louis v. Boynton, D.C., 53 F.2d 471; Continental Baking Co. v. Woodring, D.C., 55 F.2d 347.

twenty-five mile zone limit, although the route of such carrier extends far beyond such limit. There is also language which would indicate a contrary conclusion. The real import of an opinion, however, cannot be ascertained from a single word, phrase, sentence, or even paragraph, disassociated from the setting in which they are employed, and without considering the problem which was being considered by the court. The primary question before the court in the Woodring case was the reasonableness of a classification of private carriers as attempted in G.S. 66-1, 109 of the Act for the purpose of collecting the ton mileage tax.

■■■ Conceding, without deciding, that in the absence of administrative interpretation upon which the decision in the Woodring case rests, both in the lower court and in the Supreme Court, that such a classification for tax purposes would be arbitrary and therefore unconstitutional, it does not follow that the same classification under the police powers of the state for the protection of the public would be arbitrary and unreasonable. This distinction is recognized by the Supreme Court 286 U.S. at page 368 of its opinion, 52 S.Ct. at page 600, 76 L.Ed. 1155, 81 A.L.R. 1402, where the court says: "The distinction made by the statute between public and private carriers with respect to the obtaining of certificates of public convenience and necessity, and as to rates and charges, indicates the intention to keep separate the special responsibilities of public carriers from the more limited but still important duties which are owing as well by private carriers, in protecting the public highways from misuse and in insuring safe traffic conditions, * * *."

Under the clear language of G.S. 66-1, 109 and 66-1, 128, a private carrier domiciled in a city and who limits his operations to a radius of twenty-five miles beyond the city limits is not required to make application for a license. Neither is he required to file the statutory liability bond, while a private carrier who operates for a greater distance must have a license authorizing such operations, and must file the required statutory liability bond protecting the public

against loss resulting from such licensed operation. There is nothing in the Act which indicates that such license exempts him from the provisions of the Act for the first twenty-five miles, and applies only to the remaining portion of the route, or that the required liability bond may be likewise limited. The only reasonable interpretation of these provisions of the Act is that the license when issued covers the entire route, and that the statutory liability bond protects the public against loss from operations over the entire route.

We see nothing unreasonable or arbitrary in a classification which requires a liability bond for the protection of the public from one operating heavy equipment over the highways for long distances continuously, while not requiring the same protection from one operating lighter equipment for short distances from the city limits and at less frequent intervals.

The judgment of the trial court is accordingly reversed, with directions to proceed in conformity with the views expressed herein.