**RAILROAD TRANSFER SERVICE, INC.,**
a Delaware Corporation, Plaintiff-
Appellant,

v.

**The CITY OF CHICAGO et al.,**
Defendants-Appellees.

No. 15230.

United States Court of Appeals
Seventh Circuit.

March 10, 1966.

Swygert, Circuit Judge, dissented.

David Axelrod, Arnold L. Burke, Axelrod, Goodman & Steiner, Leonard B. Ettelson, Raymond T. Denten, Ettelson, O'Hagen, Ehrlich, & Frankel, Chicago, Ill., for appellant.

John O. Tuohy, Sp. Asst. Corp. Counsel, Raymond F. Simon, Corp. Counsel of

City of Chicago, Chicago, Ill., for appellees, Sydney R. Drebin, Asst. Corp. Counsel, of counsel.

Before HASTINGS, Chief Judge, and CASTLE and SWYGERT, Circuit Judges.

HASTINGS, Chief Judge.

Railroad Transfer Service, Inc., has appealed from an order of the district court dismissing its second amended complaint for declaratory and injunctive relief against the City of Chicago, Illinois (and certain of its designated officials) on the ground that Transfer had not presented the court with an actual controversy.

Transfer operates a transportation service for 21 railroads having terminals in Chicago, transporting passengers and baggage from one terminal to another when a change of terminals is required. Transfer operates wholly within the city limits of Chicago. In operating as it does, Transfer furnishes a link in the interstate transportation of passengers and baggage and is, therefore, subject to regulation by the Interstate Commerce Commission.

Prior to contracting with Transfer for its transportation services, the railroads had utilized the services of another motor carrier, Parmelee Transportation Co. But, after the railroad engaged the services of Transfer, Chicago amended its municipal code, effecting a number of changes in its regulation of the type of services provided by Transfer. The most important change required Transfer to obtain a certificate of convenience and necessity from the Chicago Public Vehicle License Commissioner and the approval of the City Council before Transfer could legally transport passengers and baggage. Transfer refused to apply for a certificate, and Chicago threatened to arrest and fine Transfer's drivers if they drove unlicensed vehicles.

Transfer and the railroads sued in the federal district court to have the ordinance declared inapplicable to Transfer or invalid. The district court granted summary judgment against Transfer and the railroads. Atchison, Topeka and Santa Fe Ry. Co. v. City of Chicago, 136 F.Supp. 476 (N.D.Ill., 1955). This court reversed, holding that Transfer was an instrumentality of the railroads in interstate commerce and that its right to operate was subject to federal control under the commerce power. Chicago's attempted regulation was held to be unconstitutional, and Chicago could not prevent Transfer from operating in Chicago. Atchison, Topeka & Santa Fe Ry. Co. v. City of Chicago, 7 Cir., 240 F.2d 930, 938 (1957).

The Supreme Court affirmed, holding that the provisions of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., precluded Chicago from preventing the transfer service. City of Chicago v. Atchison, T. & S. F. R. Co., 357 U.S. 77, 84–87, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958).

Subsequently, Chicago amended its ordinance.[1] As amended, it requires operators of terminal vehicles, such as Transfer, to obtain licenses, provided the vehicles are in safe and proper condition; to demonstrate financial responsibility; to maintain its principal office in Chicago; to use drivers residing in Chicago; to have comfortable vehicles; to use a color on its vehicles which is satisfactory to the Commissioner; and to obey orders, rules, and regulations adopted or issued by the Commissioner.

The ordinance further gives either the Commissioner or the Mayor of Chicago discretion to revoke and suspend or deny licenses. The standards for such action are not expressed, and it is difficult to determine whether the ordinance, as written, provides for a hearing before revocation or denial of a license.

After the amendment of the ordinance, the Commissioner sent Transfer the following letter:

"Please be advised that your company has not made application for the proper licenses for terminal vehicles operated by your company.

1. Chicago, Ill., Municipal Code § 28–1 et seq.

"Please be further advised that unless your company complies with the provisions of the ordinance by Friday, September 22, 1961, you are hereby ordered by this office to cease and desist the operation of your vehicles until the ordinance of the City of Chicago has been fully complied with by your company." [2]

Transfer refused to apply for the licenses, instead filing suit for a declaratory judgment or injunction, alleging that Transfer was being discriminatorily required to pay a license or tax for the privilege of operating its vehicles and that the ordinance gave the Commission illegal discretionary power to recommend revocation of licenses. [3]

The district court found, *inter alia*, the license fee charges to be a proper application of police powers and that, since Chicago had taken no action under the ordinance, there was, as yet, no actual controversy between the parties. The trial court dismissed Transfer's complaint.

Transfer appealed. This court vacated the judgment below and remanded on the ground that, unknown to the trial court, the ordinance in question had been amended in two particulars prior to the dismissal. Railroad Transfer Service, Inc. v. City of Chicago, 334 F.2d 991, 993 (1964).

On remand, the trial court found that the amendments of which it had not been previously aware did not affect its prior conclusions. Furthermore, one of the amendments had been rescinded in the interim, and the original reading of the ordinance had been restored prior to decision on remand. For the reasons that Chicago could validly tax and inspect Transfer's vehicles and that Chicago had taken no action detrimental to Transfer, the district court dismissed Transfer's second amended complaint. It is from this dismissal that Transfer has appealed.

Transfer argues that the trial court erred because the ordinance in question does not qualify as a permissible local safety regulation of interstate commerce. It contends that the ordinance bears little or no relationship to safety, but that it is an arbitrary effort by Chicago to regulate matters wholly unrelated to safety and to harass Transfer's operations. The ordinance, therefore, is claimed to constitute a serious impediment to interstate commerce.

■ Of course, if the Chicago ordinance can be said to conflict with federal regulatory measures so as to burden interstate commerce, or if federal regulation has preempted local regulation, then federal law must prevail. Bibb v. Navajo Freight Lines, 359 U.S. 520, 529, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959); City of Chicago v. Atchison, T. & S. F. R. Co., 357 U.S. 77, 87–88, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958).

As written, however, the ordinance does not collide with federal preemption, nor has it been shown to conflict with existing federal regulations in any manner burdening commerce.

■ Since it is unquestioned that a state or locality may exercise police powers of regulation, if due process is accorded and they do not conflict with or unduly burden federal right, privilege, or authority, a case of this character would ordinarily turn on whether the Chicago ordinance is a regulation within legitimate police powers. However, that is a question which need not now be determined, since the ordinance is not offensive on its face, has not been applied, and has not been shown to have burdened interstate commerce.

Continental Baking Co. v. Woodring, 286 U.S. 352, 52 S.Ct. 595, 76 L.Ed. 1155 (1932) is in point. There, at pages 367–

---

2. Chicago now admits that it has no power to stop Transfer's operations in interstate commerce.

3. In 1960, prior to filing this case, Transfer applied for and received licenses for its vehicles from the Public Vehicle License Commissioner. Since then, Transfer has deposited the required license fees for 1961, 1962, and 1963 with the Clerk of the United States District Court.

369, 52 S.Ct. at page 600, the Supreme Court stated:

"The objection to the authority given to the public service commission 'to regulate and supervise the accounts, schedules, service and method of operation,' 'to prescribe a uniform system and classification of accounts,' to require the filing of reports and data, and generally to 'supervise and regulate' all the carriers to which the act applies 'in all matters affecting the relationship' between such carriers and 'the traveling and shipping public' * * * similarly raises no question which can now be considered, as there has been no action or threat of action, so far as appears, by the commission giving ground for the contention that the constitutional rights of the appellants have been or will be invaded. * * * Whatever uncertainty may exist with respect to possible regulations of the commission will be resolved as regulations are promulgated. If any of these transcend constitutional limits, appellants will have their appropriate remedy. * * *

"The duty laid upon the commission * * * to insist that motor vehicles shall be maintained 'in a safe and sanitary condition,' to prescribe qualifications of operators as to age and hours of service, and to require the reporting of accidents, has manifest reference to considerations of safety. The terms of the statute do not require action by the commission which does not have reasonable relation to that purpose. In this respect, as well as in relation to the other matters above-mentioned, appellants had no right to resort to equity merely because of an anticipation of improper or invalid action in administration."

While the ultimate aim of the Chicago ordinance is not clear, the ordinance does have an apparent relation to responsibility. To require Transfer to maintain its offices in Chicago, to have its drivers reside in Chicago, and to give proof of financial responsibility is but to establish accessible responsibility. Such requirements are reasonably within police powers of promotion of welfare. Similarly, to require comfortable vehicles is not remote from welfare, and a requirement for approval of a color or color scheme may relate merely to convenience of identification. Finally, a requirement that Transfer obey the orders, rules, and regulations of the Commissioner may ultimately be nothing but a safety and responsibility requirement, once they are adopted and issued and their substance made apparent.[4]

To state these possibilities is not to assume their correctness nor to approve the ordinance: it is merely a demonstration that the ordinance is not obviously arbitrary nor clearly unrelated to the legitimate ends of the police powers of a locality.

While Chicago's ordinance is not, as Transfer would have it, inscrutable as a safety and welfare ordinance, it is true that its relation to safety is not in all respects self-evident. It is also true that the ordinance does not clearly provide for administrative standards or a hearing before termination of a license to operate on the streets of Chicago. What, however, is unprovided for in the language of the ordinance may yet be provided in the course of its application. We have no reason to assume that the application of the ordinance will not clarify its language in accordance with specific standards nor that a proper and just hearing will not be provided should the necessity arise. As it stands, the ordinance cannot be unequivocally classified and, until it is applied, it lacks the test whereby its real nature is revealed.

■ Transfer has not pleaded any injury and consequently has not shown any burden on interstate commerce. Transfer's apprehensions do not generate an

---

4. The Commissioner's first order to Transfer was that its employees be fingerprinted and examined by doctors. This was complied with.

actual controversy. If the ordinance is applied beyond constitutional limits, Transfer will have its appropriate remedy. Continental Baking Co. v. Woodring, supra.

The district court found jurisdiction to entertain Transfer's second amended complaint under 28 U.S.C.A. § 1337.[5] We agree.

In sum, prior to the commencement of this action in 1960, Transfer complied with the provisions of the ordinance in question by making the necessary application for its Chicago vehicle licenses and paid the required fee of $1630 for the year 1960. Thereafter, it paid into court the required license fees for 1961, 1962 and 1963.

Since the filing of this action, Transfer has carried on its terminal transfer operation without interruption or interference by Chicago or any of the individual defendants.

Chicago's authority to assess and collect its annual vehicle license fee has been established and the amount in question here is reasonable.

Chicago concedes that it now has no right to prevent the operation of Transfer's business.

Transfer operates wholly within the city limits of Chicago, has a complete monopoly and is without competition, except by licensed taxicabs.

■ The ordinance provisions concerning safety, comfort, drivers, color of vehicles and financial responsibility reasonably relate to welfare and safety and are clearly within the local police powers of Chicago and do not burden interstate commerce or conflict with federal regulatory powers.

■ There is no claim that the Commissioner or anyone else has issued any orders, rules or regulations in any way discriminating against Transfer.

There is no claim that Chicago or anyone else has applied the requirements of the ordinance in any manner to the detriment or harm of Transfer.

There is no claim that Chicago or anyone else has acted under the ordinance in any manner to deny Transfer due process.

Transfer's fears and apprehensions of what may happen to it under the ordinance have not been translated into realities.

No actual controversy has been presented to the district court as required by 28 U.S.C.A. § 2201.[6]

For the foregoing reasons, we hold that the district court did not err in dismissing Transfer's second amended complaint. The judgment order appealed from is affirmed.

Affirmed.

SWYGERT, Circuit Judge (dissenting).

Unfortunately, I find myself unable to agree with the views expressed by Chief Judge Hastings and concurred in by Judge Castle.

The import of the court's holding is that no actual controversy exists until the ordinance is applied to Transfer. Yet it is abundantly clear from the record and the city's brief that Chicago intends to enforce the ordinance against Transfer eventually.[1] A somewhat analogous prematurity argument was made during the course of the earlier litigation between the parties. The contention was that fed-

---

**5.** "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

**6.** *"In a case of actual controversy* within its jurisdiction, * * * any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration * * *."* (Emphasis added.)

**1.** For example, see the letter addressed to plaintiff by the Public Vehicle License Commissioner quoted in the majority opinion.

eral courts should not undertake to adjudicate the validity of the provision requiring a determination of public convenience and necessity before the issuance of a license until efforts to obtain an appropriate state court adjudication had been exhausted. The Court rejected the argument. City of Chicago v. Atchison, T. & S. F. Ry., 357 U.S. 77, 84, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958). More significantly, I think, the Court proceeded to dispose of the merits of the case despite the objection registered by Mr. Justice Harlan (Mr. Justice Frankfurter and Mr. Justice Burton joining in the dissent):

> Nevertheless, the validity of the ordinance should not be determined until Transfer has applied to Chicago for a "terminal" license and the local authorities have had an opportunity to act on the application. Not until then will it be known whether the ordinance, as it may be applied to Transfer's operations, trespasses upon paramount federal concerns. Id. at 89, 78 S.Ct. at 1070.

Transfer is operating at the city's sufferance, without having obtained a license. Before a license can be obtained Transfer must comply with at least one of the questioned requirements of the ordinance, namely, proof that it is financially responsible. In *Atchison* the issue was whether the City of Chicago could withhold the issuance of a license to Transfer until it had first been determined that public convenience and necessity required additional interterminal service. I see no difference in essence between the requirement to obtain a determination of public convenience and necessity and the requirement that the plaintiff offer proof of its financial responsibility as a condition to the issuance of a license. In either event, the city is asserting a power to prevent an interstate operation, a power which it does not possess.

In *Atchison* the Court said:

We are fully aware that use of local streets is involved, but no one suggests that Congress cannot require

the City to permit interstate commerce to pass over those streets. Of course the City retains considerable authority to regulate how transfer vehicles shall be operated. It could hardly be denied, for example, that such vehicles must obey traffic signals, speed limits and other general safety regulations. Similarly the City may require registration of these vehicles and exact reasonable fees for their use of the local streets. Id. at 88, 78 S.Ct. at 1069.

In my opinion, not only the provision requiring proof of financial responsibility, but also the provisions which require that Transfer maintain its principal place of business in Chicago and that its drivers reside in that city have no relationship to the safety of plaintiff's operations. These provisions are neither general traffic regulations nor safety measures. They do not fall within the permissible area open to local regulation as delineated by the Supreme Court in *Atchison*.

I would reverse the order of dismissal.